1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                  EASTERN DISTRICT OF CALIFORNIA

8

9

LINDA ELIZABETH RICCHIO,        )  1:10-cv—0824-OWW-SKO-HC
10                                )
                 Petitioner,      )  FINDINGS AND RECOMMENDATIONS TO
11                                )  DISMISS PETITIONER'S DUE PROCESS
                                  )  CLAIM CONCERNING EVIDENCE
12      v.                        )  WITHOUT LEAVE TO AMEND FOR
                                  )  FAILURE TO STATE A COGNIZABLE
13  WARDEN TINA HORNBEAK, et al., )  CLAIM  (DOCS. 1, 5)
                                  )
14               Respondents.     )  FINDINGS AND RECOMMENDATIONS TO
                                  )  DENY PETITIONER'S REMAINING
15  _____)  CLAIMS AND PETITIONER'S REQUEST
                                     FOR AN EVIDENTIARY HEARING
16                                   (DOCS. 1, 5)

17                                   FINDINGS AND RECOMMENDATIONS TO
                                     DECLINE TO ISSUE A CERTIFICATE OF
18                                   APPEALABILITY AND TO ENTER
                                     JUDGMENT FOR RESPONDENT
19
                                     **OBJECTIONS DEADLINE:**
20                                   **THIRTY (30) DAYS**

21

22        Petitioner is a state prisoner proceeding pro se with a

23  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

24  The matter has been referred to the Magistrate Judge pursuant to

25  28 U.S.C.§ 636(b)(1) and Local Rules 302 and 304.  Pending before

26  the Court is the petition, which was filed on April 28, 2010, and

27  an addendum that was filed on May 19, 2010.  (Docs. 1, 5.)

28  Respondent's answer was filed on August 25, 2010, and

                                   1

Petitioner's traverse was filed on September 13, 2010. Petitioner filed a supplement to the traverse on September 24, 2010.

I.   <u>Consideration of Dismissal of the Petition</u>

Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); <u>see</u> also <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990). Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error.  Rule 4, Advisory Committee Notes, 1976 Adoption; <u>O'Bremski v. Maass</u>, 915 F.2d at 420 (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.  <u>Hendricks v. Vasquez</u>, 908 F.2d 490, 491 (9th Cir. 1990).

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; <u>see</u>, <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43

2

(9th Cir. 2001).

Here, Respondent answered the petition on August 25, 2010, and Petitioner filed a traverse in September 2011. Subsequently, the United States Supreme Court decided <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011). Because <u>Swarthout</u> appears to apply in the instant case, and because no motion to dismiss any claims in the petition has been filed, the Court proceeds to consider whether the petition states a cognizable claim for relief.

   II.   <u>Background</u>

Petitioner alleges that she is an inmate of Valley State Prison for Women in Chowchilla who is serving a sentence of twenty-five (25) years to life imposed in the San Diego County Superior Court upon Petitioner's 1989 conviction of first degree murder with personal use of a firearm. (Pet. 1, 51.) Petitioner challenges the decision of California's Board of Parole Hearings (BPH) made after a hearing held on April 10, 2007, to deny Petitioner parole for five years. (Pet. 16.) Petitioner also argues that the state court decisions upholding the parole determination were objectively unreasonable. (Pet. 14-18.)

It appears from Petitioner's allegations and accompanying documentation that she attended the parole hearing held before the board on April 10, 2007. (Pet., doc. 1-2, 1, 13.) Petitioner spoke to the Board about numerous parole suitability factors. (<u>Id.</u> at 17-80; doc. 1-3, 1-79; doc. 1-4, 1-4.) Petitioner made a statement in favor of parole to the board on her own behalf. (Doc. 1-4, 41-44.) Petitioner was also assisted at the hearing by counsel, who appeared and advocated on her

behalf.  (Doc. 1-2, 1, 10, 13, 20, 24; doc. 1-3, 5; doc. 1-4, 37-41.)  Petitioner was present when the board gave a statement of reasons for the denial of parole.  (Doc. 1-4, 55-70.)  The decision was based on the nature of the commitment offense, Petitioner's failure to take full responsibility for her offense, Petitioner's dysfunctional social history and insufficient participation and progress in beneficial self-help programming, problems with her parole plan, and Petitioner's history of substance abuse.  (Id.)

Petitioner asks this Court to review whether there was some evidence to support the conclusion that Petitioner was unsuitable for parole because she posed a current threat of danger to the public if released.  Petitioner complains that in numerous respects, the board and the state courts misinterpreted the facts or made factual conclusions that are not supported by the evidence.  Petitioner contends that the board did not consider all relevant information, and it denied her rights to review relevant documents.  Petitioner also complains that the state courts wrongfully denied an evidentiary hearing.  Petitioner complains that the denial of parole was punishment for having married an ex-correctional officer.  Petitioner alleges that her rights to due process and equal protection of the laws were violated; further, her protection against cruel and unusual punishment under the Eighth and Fourteenth Amendments was infringed by the board's reliance on the victim's sister's version of the commitment offense and false allegations of Correctional Officer Robinson.  (Pet. 8-12, 19-45.)

///

III.   Failure to Allege a Claim Cognizable on Habeas Corpus

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[1]

---

[1] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16. The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16. The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. Id. at 9. Further, the discretionary decision to release one on parole does not involve restrospective factual determinations,

Swarthout v. Cooke, 131 S.Ct. 859, 862.   In Swarthout, the Court

rejected inmates' claims that they were denied a liberty interest

because there was an absence of "some evidence" to support the

decision to deny parole.   The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.   (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication—and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.   In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.   The Court concluded that the

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.   The Court in Swarthout expressly

noted that California's "some evidence" rule is not a substantive

federal requirement, and correct application of California's

"some evidence" standard is not required by the Federal Due

Process Clause.   Id. at 862-63.

---

as in disciplinary proceedings in prison; instead, it is generally more
discretionary and predictive, and thus procedures designed to elicit specific
facts are unnecessary.  Id. at 13.  In Greenholtz, the Court held that due
process was satisfied where the inmate received a statement of reasons for the
decision and had an effective opportunity to insure that the records being
considered were his records, and to present any special considerations
demonstrating why he was an appropriate candidate for parole.  Id. at 15.

Here, in her due process claim, Petitioner asks this Court to engage in the very type of analysis foreclosed by <u>Swarthout</u>. This Court will not re-weigh the evidence or otherwise review the correctness of the board's factual conclusions.  Further, a review of the transcript does not reveal the absence of any necessary information or the denial of Petitioner's access to such information.  Petitioner does not state facts that point to a real possibility of constitutional error or that otherwise would entitle Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement.  Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.

Petitioner cites state law concerning the appropriate weight to be given to evidence.  To the extent that Petitioner's claim or claims rest on state law, they are not cognizable on federal habeas corpus.  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  <u>Wilson v. Corcoran</u>, 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  <u>Souch v. Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).

Further, to the extent that Petitioner complains of errors in the state post-conviction process, Petitioner does not state a claim that would entitle her to relief in this proceeding.  It is established that federal habeas relief is not available to redress procedural errors in the state collateral review process.

1  Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Carriger v.

2  Stewart, 95 F.3d 755, 763 (9th Cir. 1996), vacated on other

3  grounds, Carriger v. Stewart, 132 F.3d 463 (1997); Franzen v.

4  Brinkman, 877 F.2d 26, 26 (9th Cir. 1989).

5  A petition for habeas corpus should not be dismissed without

6  leave to amend unless it appears that no tenable claim for relief

7  can be pleaded were such leave granted.  Jarvis v. Nelson, 440

8  F.2d 13, 14 (9th Cir. 1971).

9  Here, it is clear from the allegations in the petition that

10 Petitioner attended the parole suitability hearing, made

11 statements to the BPH, and received a statement of reasons for

12 its decision.  Thus, Petitioner's own allegations and

13 documentation establish that she had an opportunity to be heard

14 at the hearing and received a statement of reasons for the

15 decision in question.  It therefore does not appear that

16 Petitioner could state a tenable due process claim.

17 Accordingly, it will be recommended that Petitioner's due

18 process claim concerning the evidence supporting the denial of

19 parole be dismissed without leave to amend.

20     IV.  Fair Tribunal

21 Petitioner refers to the reliance of the BPH and the

22 California courts upon the "version" of Petitioner's commitment

23 offense given by Susan Fisher, the sister of the victim of

24 Petitioner's commitment offense.  Petitioner alleges that Fisher

25 was an "ex-BPH chairperson" and a victim rights advocate for

26 Governor Schwarzenegger.  (Pet. 11, 29.)  Petitioner alleges that

27 Fisher's statement of the offense on a crime victim's website was

28 inconsistent with her sworn testimony given at Petitioner's

8

trial.  (Pet. 29.)  Petitioner complains that she was not given

an evidentiary hearing by state authorities so that she could

present evidence of her own version of the offense.  (Id.)

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
with respect to any claim that was adjudicated
on the merits in State court proceedings unless
the adjudication of the claim—

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

(e)(1) In a proceeding instituted by an application
for a writ of habeas corpus by a person in custody
pursuant to the judgment of a State court, a
determination of a factual issue made by a State
court shall be presumed to be correct. The applicant
shall have the burden of rebutting the presumption
or correctness by clear and convincing evidence.

The petitioner bears the burden of establishing that the

decision of the state court was contrary to, or involved an

unreasonable application of, the precedents of the United States

Supreme Court.  Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th

Cir. 2004); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.

1996).

A state court's decision contravenes clearly established

Supreme Court precedent if it reaches a legal conclusion contrary

to that of the Supreme Court or concludes differently on an

indistinguishable set of facts.  Williams v. Taylor, 529 U.S.

362, 405-06 (2000).  The state court need not have cited Supreme

9

Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). The state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. <u>Hernandez v. Small</u>, 282 F.3d 1132, 1142 (9th Cir.2002); <u>see</u>, <u>Williams</u>, 529 U.S. at 408-09. An application of law is unreasonable if it is objectively unreasonable; an incorrect or inaccurate application of federal law is not necessarily unreasonable. <u>Williams</u>, 529 U.S. at 410.

A fair trial in a fair tribunal is a basic requirement of due process. <u>In re Murchison</u>, 349 U.S. 133, 136 (1955). California inmates have a due process right to parole consideration by neutral, unbiased decision makers. <u>O'Bremski v. Maass</u>, 915 F.2d 418, 422 (9th Cir. 1990).[2]

Here, the allegations of the petition and transcripts of the hearing reflect that Fisher appeared at Petitioner's parole hearing as a family member of the victim; Fisher did not function as a commissioner. There is no basis for a conclusion that the commissioners presiding at Petitioner's hearing considered any website or other extra-record source of information from Fisher.

---

[2]Although Petitioner mentions the Eighth and Fourteenth Amendments in connection with this claim (Pet. 11), it appears that Petitioner is alleging a claim concerning bias of the tribunal, which the Court understands to be a claim based on Petitioner's right to due process of law guaranteed by the Fourteenth Amendment.

Further, there is no evidence presented that warrants an inference that the commissioners who presided over Petitioner's parole hearing were influenced in any way by Fisher's previous status as a member of the BPH.

Petitioner also submitted materials concerning Presiding Commissioner Ed Martinez, who was one of two commissioners who presided over Petitioner's parole hearing.  The Court finds no evidence that Commissioner Martinez exhibited any bias or unfairness while he presided over Petitioner's parole hearing.

Because Petitioner has not established any bias or other basis for a violation of due process with respect to the board's impartiality, Petitioner has not shown that the state courts' decisions upholding the board's denial of parole were contrary to, or involved an unreasonable application of, the precedents of the United States Supreme Court.

Accordingly, it will be recommended that Petitioner's claim concerning the lack of an impartial tribunal be denied.

V.   Equal Protection

Petitioner alleges that the BPH's actions denied her the equal protection of the laws.  (Pet. 8, 9, 24, 32.)

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion, or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Bell v. Wolfish, 441 U.S. 520, 545-46 (1979).  The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike.  City of Cleburne, Texas v.

Cleburne Living Center, 473 U.S. 432, 439 (1985). Violations of equal protection are shown when a respondent intentionally discriminated against a petitioner based on membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treated a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Here, Petitioner has not alleged any facts to demonstrate a violation of equal protection. She has not alleged that she is a member of a protected class or that membership in a protected class was the basis of any alleged discrimination.

Accordingly, it will be recommended that Petitioner's equal protection claim be denied.

VI. Punishment

Petitioner appears to argue that she was punished, in effect, for having married an ex-correctional officer while in custody and having sued Correctional Officer Robinson for his allegedly having sexually victimized her in prison. (Pet. 24.) Petitioner argues that denial of parole for five years for these reasons was cruel and unusual punishment and a denial of due process and equal protection. (Pet. 32.)

The transcript of the hearing reflects that Petitioner responded to questions of Presiding Commissioner Martinez regarding her marriage to Adolpho Navarro, whom Petitioner met while he was a correctional officer at the prison where she was

incarcerated.  Petitioner testified that they began a romantic
relationship only after Navarro had stopped working at the
prison, and they were married from March 1991 through May 2004,
when they were divorced due to Navarro's adultery.  (Doc. 2-1,
74-75.)  Petitioner testified that she had learned from observing
her father's abuse of her mother that one could stay in a
marriage with poor communication skills and little understanding
of a spouse's needs.  (Doc. 1-2, 77-78.)  However, when Navarro
found another partner, Petitioner appropriately filed for divorce
because her husband's behavior was inappropriate.  (Id. at 78.)
When Commissioner Martinez asked Petitioner if during her
relationship with Navarro, she had displayed some behavior
similar to her behavior prior to the homicide, Petitioner denied
it.  (Id. at 79-80.)

The evidence at the hearing included documentation of a
prison disciplinary investigation in 1990 concerning whether
Petitioner had a personal relationship with Navarro.  It was
reported that Petitioner had refused to cooperate.  (Doc. 1-2,
80.)  Additional investigation revealed that Petitioner had
letters and photographs reflecting a romantic relationship with
Navarro since late 1989.  (Doc. 1-3, 2-5.)

Commissioner Martinez explained to Petitioner that the issue
concerning this conduct of Petitioner was that Petitioner had a
relationship, which she denied during an investigation, and the
relationship itself was against the correctional department's
policy.  (Doc. 1-3, 5-9.)  Although Petitioner believed that her
marriage was helpful to her progress, Commissioner Martinez
characterized the decision to become involved with a correctional

1  officer as a poor decision.  (<u>Id.</u> at 9.)  Petitioner said that

2  she fully understood, and she agreed with the Commissioner.

3  (<u>Id.</u>)  Commissioner Martinez summarized the matter by saying that

4  the focus of the discussion was Petitioner's judgment and

5  decision-making, and that there had been a pattern of behavior

6  carrying over from before the commitment offense to after it.

7  (<u>Id.</u> at 10-11.)

8      The board then brought up an internal affairs investigation

9  conducted in 2007 concerning Petitioner's allegations that a male

10 correctional officer named Sean Robinson had a sexual

11 relationship with Petitioner for several years.  The allegation

12 had surfaced only after Petitioner had obtained confidential

13 information concerning the officer from a family member.

14 Petitioner filed a lawsuit concerning the alleged sexual

15 misconduct.  (<u>Id.</u> at 15.)  The investigators concluded that

16 although Petitioner alleged that the relationship had existed, it

17 could not be substantiated.  Evidence included witnesses who

18 related that Petitioner was infatuated with Robinson and

19 endeavored to be located wherever the officer was in the prison,

20 as well as a photograph of the officer which Petitioner had

21 claimed he had given her but which was actually printed on a

22 vocational graphic arts in-service training book.  Evidence of

23 sexual misconduct alleged by Petitioner had not surfaced in the

24 investigation.  The conclusion was that it was questionable if

25 Petitioner had moved forward in her rehabilitation during her

26 incarceration because her conduct was similar to the crime for

27 which she was incarcerated.  (Doc. 1-3, 12-15.)

28      The conclusion concerning the similarity of Petitioner's

14

post-offense behavior with pre-offense conduct was based on Petitioner's commitment offense, namely, the murder of a former, long-term boyfriend, whom Petitioner had stalked obsessively. Petitioner had secretly acquired information concerning her victim and his whereabouts.  After the victim found a new partner and moved to a new place to reside with her, Petitioner continued to contact the victim and his partner, harassed the victim's family, and threatened and confronted the victim repeatedly. (Doc. 1-2, 27-37.)

     Petitioner denied Robinson's allegations that she had stalked him, and she contended that she had been set up by Robinson, who had read her file concerning the commitment offense.  (Doc. 1-3, 15-19.)

     In explaining their decision to deny parole, the commissioners relied on the nature of the commitment offense, noting that after Petitioner's lengthy relationship with the victim disintegrated due to his having another partner, Petitioner stalked the victim in a calculated manner and shot him repeatedly after renting an apartment next to his. (Doc. 1-4, 55-57.)  Petitioner's programming was found to have been good except for the 1990 disciplinary report concerning conspiring with a staff member, which was considered to show a continuing pattern of behavior. (Id. at 58, 68-70.)  The primary concern appeared to be that Petitioner failed to take responsibility for her offense because she asserted that she killed the victim reactively at a time when she intended to kill herself.  (Id. at 63, 66.)  Petitioner also needed to address her substance abuse problem. (Id. at 61.)

The record thus shows that Petitioner's relationship with Navarro was considered significant because Petitioner engaged in secretive behavior, and the relationship was contrary to the rules and policies of the correctional institution; it was important because Petitioner acted covertly in violation of policies regarding relationships, and not because Petitioner exercised any right to a relationship or to a marital status.

Likewise, the situation involving Robinson reflected continued pursuit or stalking behavior with a correctional officer. Both instances were considered and evaluated in the context of Petitioner's programming and progress while in the institution. The record does not support the allegations that Petitioner was punished.

Petitioner adamantly denies that her relationship with Navarro predated his separation from employment with the prison, and just as emphatically alleges that she was pursued by Robinson instead of pursuing him. The Court reiterates that it is not within the scope of this Court's review of the board's and the state courts' proceedings to re-weigh the evidence or to evaluate the application of the "some evidence" rule.

Petitioner has not demonstrated that she was punished for exercise of her right to marry or involvement in relationships with correctional officers. Likewise, Petitioner has not demonstrated that she was "punished" for having filed a lawsuit against, or because of, Correctional Officer Robinson. Instead, the record reflects that the board appropriately considered the extent to which Petitioner had progressed with respect to her participation in, and judgment concerning, interpersonal

1  relationships.  The record supports the conclusion that

2  Petitioner's conduct with correctional officers was considered to

3  reflect a lack of progress in rehabilitation and programming in

4  connection with Petitioner's tendency to develop obsessive

5  attachments with inappropriate partners – matters central to the

6  commission of Petitioner's commitment offense.

7       Accordingly, it will be recommended that Petitioner's claim

8  of unfairness or inappropriate punishment in violation of the

9  Eighth and Fourteenth Amendments be denied.

10      In summary, the Court concludes that Petitioner's due

11  process claim concerning the absence of some evidence to support

12  the denial of parole is not cognizable in a proceeding pursuant

13  to 28 U.S.C. § 2254.  The remaining claims should be denied

14  because Petitioner has not shown that she is entitled to relief

15  on her Fourteenth Amendment claims concerning the lack of an

16  impartial tribunal and denial of equal protection, or on her

17  claim under the Eighth and Fourteenth Amendments.

18      VII.  <u>Request for an Evidentiary Hearing</u>

19      Petitioner requests that she be given an evidentiary

20  hearing.

21      If a petition is not dismissed, the Court must review the

22  answer, any transcripts and records of state-court proceedings,

23  and any materials submitted under Rule 7 to determine whether an

24  evidentiary hearing is warranted.  Habeas Rule Rule 8(a).  In

25  considering a request for an evidentiary hearing, a court must

26  first determine whether a factual basis exists in the record to

27  support the petitioner's claim.  <u>Baja v. Ducharme</u>, 187 F.3d 1075,

28  1078 (9th Cir. 1999).  A court will determine whether the

Petitioner has alleged facts that, if proven, would entitle him or her to habeas relief.  Earp v. Ornoski, 431 F.3d 1158, 1167 (9th Cir. 2005).

As demonstrated by the foregoing analysis of the pleadings and exhibits, Petitioner did not allege or document specific facts that, if proven, would entitle her to relief.  Petitioner's complaints with the inferences and conclusions drawn by the board concern factual inconsistencies or controversies that were considered by the board and were resolved against Petitioner by the board in an appropriate exercise of its adjudicatory powers. The record before the Court is adequate for a decision on the merits.

It will be recommended that Petitioner's request for an evidentiary hearing be denied.

VIII.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A

1  certificate should issue if the Petitioner shows that jurists of
2  reason would find it debatable whether the petition states a
3  valid claim of the denial of a constitutional right and that
4  jurists of reason would find it debatable whether the district
5  court was correct in any procedural ruling.  Slack v. McDaniel,
6  529 U.S. 473, 483-84 (2000).

7      In determining this issue, a court conducts an overview of
8  the claims in the habeas petition, generally assesses their
9  merits, and determines whether the resolution was debatable among
10 jurists of reason or wrong.  Id.  It is necessary for an
11 applicant to show more than an absence of frivolity or the
12 existence of mere good faith; however, it is not necessary for an
13 applicant to show that the appeal will succeed.  Miller-El v.
14 Cockrell, 537 U.S. at 338.

15     A district court must issue or deny a certificate of
16 appealability when it enters a final order adverse to the
17 applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

18     Here, it does not appear that reasonable jurists could
19 debate whether the petition should have been resolved in a
20 different manner.  Petitioner has not made a substantial showing
21 of the denial of a constitutional right.  Accordingly, it will be
22 recommended that the Court decline to issue a certificate of
23 appealability.

24     IX.  Recommendation

25     Accordingly, it is RECOMMENDED that:

26     1)  Petitioner's due process claim concerning the evidence
27 supporting the denial of parole be DISMISSED without leave to
28 amend for failure to state a claim cognizable in a proceeding

1   pursuant to 28 U.S.C. § 2254; and

2       2)   The petition be DENIED insofar as Petitioner claims that
3   her Fourteenth Amendment right to due process of law was violated
4   by the absence of an impartial tribunal, her Fourteenth Amendment
5   right to the equal protection of the laws was denied by the
6   actions of the Board of Parole Hearings, and her Eighth and
7   Fourteenth Amendment rights were violated by the reliance of the
8   Board of Parole Hearings on reports concerning Petitioner's
9   conduct relating to her romantic involvement with correctional
10  officers; and

11      3)   The Court DENY Petitioner's request for an evidentiary
12  hearing; and

13      4)   The Court DECLINE to issue a certificate of
14  appealability; and

15      4)   The Clerk be DIRECTED to enter judgment for Respondent.

16      These findings and recommendations are submitted to the
17  United States District Court Judge assigned to the case, pursuant
18  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of
19  the Local Rules of Practice for the United States District Court,
20  Eastern District of California.  Within thirty (30) days after
21  being served with a copy, any party may file written objections
22  with the Court and serve a copy on all parties.  Such a document
23  should be captioned "Objections to Magistrate Judge's Findings
24  and Recommendations."  Replies to the objections shall be served
25  and filed within fourteen (14) days (plus three (3) days if
26  served by mail) after service of the objections.  The Court will
27  then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
28  636 (b)(1)(C).  The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 11, 2011**                          /s/ Sheila K. Oberto
                                   UNITED STATES MAGISTRATE JUDGE